James McINTOSH et al., Appellants,

v.

Francis BREEDING, by Richmond Amburgey, his next friend, Appellee.

Court of Appeals of Kentucky.

Dec. 2, 1955.

Napier & Napier, C. W. Napier, C. W. Napier, Jr., Hazard, for appellants.

Clark Pratt, Hindman, for appellee.

## CAMMACK, Judge.

James McIntosh and Morris U. Hylton, his son-in-law, are appealing from a judgment which canceled a deed and two mortgages executed by Francis Breeding, the appellee. The deed and one of the mortgages were executed by Breeding to McIntosh, while the second mortgage was executed by Breeding to Hylton. The trial court canceled the instruments after finding that they were executed without consideration at a time when Breeding was of unsound mind and did not know the effect of his acts.

The action was brought by Richmond Amburgey, as next friend of Breeding, an alleged incompetent due to habitual drunkenness dating from his military service in the first World War. He sought to cancel three deeds which the appellee had executed to McIntosh. The deeds covered approximately 15 acres of the land which Breeding inherited from his father. His original inheritance was 125 acres, 110 acres of which he had sold prior to 1947. The first of the McIntosh deeds was executed on April 29, 1947, and the second on July 14, 1947. The third deed was executed on February 3, 1950.

The trial court refused to cancel the first two deeds because a judgment of the Knott Circuit Court, entered on November 16, 1949, had recognized their validity. That action had been brought by Breeding, in his own name, to set aside the two deeds for failure of consideration and lack of mental capacity on the part of himself. In that action, prior to judgment, the parties reached an agreement that McIntosh be declared the owner in fee simple of the tracts covered by the two deeds upon his payment of $200 cash to Breeding; and the extension for 12 months of the due date on a note for $550.25 which Breeding had executed to McIntosh on August 5, 1947. The cancellation of this note was part of the recited consideration for the last deed, executed February 3, 1950.

Pursuant to the agreement of the parties, the trial court "dismissed" the action, but incorporated the terms of the agreement in its judgment of November 16, 1949. The validity of the two deeds was thereby established, and the parties can not relitigate that issue in this case. Therefore, the trial court, in the instant case, properly held that the prior judgment precluded its setting aside the two deeds executed in 1947.

The judgment entered by the trial court canceled the deed of February 3, 1950, on a finding that it was executed without consideration, and at a time when Breeding was of unsound mind, and so intoxicated that he did not know he was signing a deed and did not know the effect of his act. The appellants urge reversal of the judgment on the ground that it is not supported sufficiently by the evidence.

Under CR 52.01, findings of fact can not be set aside unless they are clearly erroneous, and due regard must be given to the opportunity of the trial court to judge the credibility of the witnesses. Numerous witnesses testified in the trial court that Breeding has been an habitual drunkard for many years, and that, when intoxicated, he has no will power or self control. Five witnesses testified that his general reputation in his home community is one of incapacity to perform business transactions, even when he is not intoxicated. In addition, the trial court personally observed the actions and appearance of Breeding.

The canceled deed was notarized by B. B. Smith, who testified that Breeding, when asked if he knew what he was signing, answered, "I reckon I do * * * I am so damn drunk I don't know whether I can write my name or not." This testimony was confirmed by one of the witnesses to the signing of the deed, who further stated that Breeding was in no condition to sign the instrument.

In view of the foregoing evidence, we are unable to conclude that the trial court erred in his findings of fact. Therefore, we uphold the cancellation of the deed of February 3, 1950.

It is axiomatic that, when an instrument is canceled for lack of mental capacity of a party to the transaction, the other party should be made whole by returning to him any consideration actually paid under the canceled instrument. In this case, the trial court concluded that, actually, no consideration had been paid, and therefore nothing was to be returned to Hylton or McIntosh. The appellants urge reversal of this finding of fact also on the ground that it is not supported by the evidence.

The consideration recited in the deed itself consisted of $97.35 cash and the assumption and cancellation, by McIntosh, of numerous debts owed by Breeding; namely, (1) a mortgage and note for $1450, executed to Hylton on December 4, 1949; (2) a mortgage and note for $200, executed to McKinley Craft on August 28, 1948; (3) a mortgage and note for $550.25, executed to McIntosh on August 5, 1947; and (4) a promissory note for $200 to Hylton, which had been assigned to McIntosh.

The trial court canceled the mortgage to Hylton for $1450 for failure of consideration. The alleged debt was incurred by Breeding in purchasing from Hylton a taxi which the latter "repossessed" after Breeding had made three payments, totaling $291. Breeding contends that the entire transaction was a fraudulent scheme to obtain his money. The evidence reveals that Breeding was permitted to ride in the taxi, and that he, in a drunken condition, accompanied the driver on several occasions. However, no bill of sale was ever delivered to Breeding, and he did not possess, so far as the record discloses, a permit to operate the automobile as a taxi. We think the evidence amply supports the trial court's conclusion that the car was never delivered to Breeding, and, therefore, the mortgage and note were properly canceled for failure of consideration.

The trial court found also that the mortgage and note to McIntosh in the amount of $550.25 had been made without consideration. It will be recalled that an extension of the due date on this mortgage and note was a part of the consideration recited in the agreement to dismiss the first action between Breeding and McIntosh. The judgment in that case recognized the validity of this mortgage, and, therefore, it was error for the trial court to cancel the instrument. McIntosh is entitled to a lien on the property in the amount of $550.25, plus any unpaid interest.

 The record discloses that McIntosh paid $217 to McKinley Craft to discharge the note of August 28, 1948. Both participants in the transaction testified that the principal and interest were paid, and the receipt was produced in court. This proof stands uncontroverted, and therefore the trial court should have concluded that this consideration of $217 was paid. Its finding in this respect is clearly erroneous, and therefore we direct that the lien to which McIntosh is entitled should be increased by the additional sum of $217, plus interest from the date of payment.

No convincing evidence was produced showing that consideration was paid for the note which Hylton assigned to McIntosh. The record is devoid also of evidence that McIntosh paid any consideration for the assignment. In the absence of proof of the alleged loan to Breeding, or of consideration paid by McIntosh for the assignment, the trial court properly denied the part of his claim based upon the cancellation of that note.

The consideration of $97.35 cash recited in the deed was established sufficiently at trial. McIntosh testified that he paid this consideration, and his testimony, with the recitation in the deed, is sufficient to establish a prima facie case of payment. To refute that proof Breeding merely testified that he remembered nothing about the transaction, and some of his close friends and relatives testified that they never saw him with large sums of money. This evidence was insufficient to controvert the proof of payment. Therefore, the trial court should have found that this consideration also was actually paid. Its finding to the contrary must be set aside, and McIntosh's lien increased by the additional sum of $97.35, plus interest from the date of payment.

The trial court found that McIntosh had taken possession of the property immediately after the deed of February 3, 1950 was executed. The findings of fact state that the rental value of the property was $20 a month, a finding amply supported by the record. Hence, Breeding is entitled to that sum for each month that McIntosh has had possession under the void deed.

The judgment is affirmed in part, and reversed in part with directions to enter a judgment consistent with this opinion.